IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,897

STATE OF KANSAS,
*Appellee*,

v.

TONY TOLIVER,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches.

2.

Parolees—along with probationers and prisoners—exist on a continuum of possible punishments, all of which curtail their freedoms and diminish their reasonable expectation of privacy.

3.

A totality of the circumstances analysis is used to determine whether a search of a parolee is reasonable. Under this test, the reasonableness is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

4.

A parolee who signs a parole agreement allowing suspicionless residential searches by his or her parole officer does not have a legitimate expectation of privacy in his or her home, and the State's interest in supervising parolees to prevent recidivism and promote reintegration is substantial.

5.

Under the facts of this case, the warrantless and suspicionless search of a parolee's home did not violate the Fourth Amendment of the United States Constitution or Section 15 of the Kansas Constitution Bill of Rights.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 344, 368 P.3d 1117 (2016). Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed May 18, 2018. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Brenda Mari Jordan*, of Manhattan, argued the cause and was on the briefs for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *Bethany C. Fields*, deputy county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.: The State appeals a Court of Appeals panel's suppression of the evidence obtained through a suspicionless search of parolee Tony Toliver's residence. The panel held that because the condition in Toliver's signed parole agreement allowing such searches was not authorized by Kansas law as required by *State v. Bennett*, 288 Kan. 86, 200 P.3d 455 (2009), the search violated his Fourth Amendment rights. We clarify

2

*Bennett*, reverse the panel's decision, and affirm the judgment of the district court denying Toliver's suppression motion.

## FACTS AND PROCEDURAL BACKGROUND

After Toliver's conviction for battery of a law enforcement officer, he was ultimately placed on post-incarceration supervision, i.e., parole, with the Kansas Department of Corrections (KDOC). Toliver signed an agreement that set out the specific conditions of his parole. One of these "Conditions of Release for Post-incarceration Supervision" required his subjection to suspicionless residential searches by his parole officers. It stated in relevant part:

"I agree to

. . . .

"• [b]e subjected to a *search of my person, residence, and any other property under my control by parole officers*, any authorized parole staff, and department of corrections enforcement, apprehension and investigation officers *with or without a search warrant and with or without cause*." (Emphases added.)

Toliver's parole officer later conducted a "home visit" at Toliver's residence to verify his address. That officer, another KDOC officer, and three Riley County Police Department detectives searched the apartment and found marijuana in Toliver's bedroom. Toliver was arrested and charged with misdemeanor possession of marijuana under K.S.A. 2011 Supp. 21-5706(b)(3).

Toliver filed a motion to suppress the marijuana. He argued that parolees have an expectation of privacy in their home but conceded the privacy interest is diminished. And

3

he further argued that suspicionless searches of parolees violate the Fourth Amendment unless such searches are authorized under state law.

After an evidentiary hearing on the motion, the trial court held that the parole officer lacked reasonable suspicion or probable cause to search Toliver's home. It agreed with Toliver that parolees have an expectation of privacy in their homes but that the expectation could be diminished through state law authorizing suspicionless searches. The court disagreed, however, with Toliver's claim that Kansas law did not approve the parole agreement condition authorizing the suspicionless search of his home. The court found the Internal Management Policies and Procedures (IMPP) of KDOC authorized such parole conditions and were not in violation of Kansas law. So KDOC's suspicionless search was constitutional.

Toliver was found guilty of marijuana possession based on facts agreed to by the parties, while the suppression issue was preserved for appeal.

The majority of the Court of Appeals panel cited this court's decision in *Bennett*, which held that "parolees may be subjected to suspicionless searches authorized by state law as long as such searches are not arbitrary or done for harassment purposes." *State v. Toliver*, 52 Kan. App. 2d 344, 358, 368 P.3d 1117 (2016) (quoting *Bennett*, 288 Kan. at 95-96). And the panel majority focused on whether K.S.A. 2014 Supp. 22-3717(k)(2) authorized the suspicionless residential search. The statute states in relevant part:

> "(2) Parolees and persons on postrelease supervision are, and shall agree in writing to be, *subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension and investigation officer*, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious

4

searches or searches for the sole purpose of harassment." (Emphasis added.) K.S.A. 2014 Supp. 22-3717(k)(2).

The majority construed this language to mean that statutory authorization for suspicionless searches of parolees was limited to searches of their person. *Toliver*, 52 Kan. App. 2d at 354.

Having concluded the statute did not permit the residential search, the majority invalidated the parole agreement and held the search violated the Fourth Amendment. According to the majority, the statute

> "defines the diminished privacy interests of Kansas parolees and sets the parameters by which a parolee may be subject to a reasonable search and seizure under the Fourth Amendment. Consistent with the diminished privacy interests, K.S.A. 2014 Supp. 22-3717(k)(2) allows KDOC parole officers to subject parolees to suspicionless searches and seizures. *The statute does not, however, empower KDOC parole officers to further infringe upon the privacy expectations of parolees by sanctioning the suspicionless searches of their residences and other property under their control as provided by the Parole Agreement*. As a result, the variance between K.S.A. 2014 Supp. 22-3717(k)(2) and Toliver's Parole Agreement is consequential. While the Kansas Legislature has clearly authorized suspicionless searches of a parolee, it has not authorized suspicionless searches of the parolee's residence or property." (Emphasis added.) *Toliver*, 52 Kan. App. 2d at 358-59.

Judge Gardner dissented. Placing greater emphasis on Toliver's agreed-upon parole condition, she opined parolees have a diminished expectation of privacy in their homes, particularly when informed that the property may be subject to search as a condition of release from incarceration. She also disagreed with the majority's interpretation of K.S.A. 2014 Supp. 22-3717(k)(2), and would read the statute to expressly incorporate the agreement.

5

In response to the panel's decision, the 2016 Legislature amended K.S.A. 22-3717(k) to explicitly allow suspicionless searches of a parolee's home. L. 2016, ch. 100, § 1 (effective July 1, 2016). We later granted the State's petition for review. Our jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

Issue: *The suspicionless search of Toliver's residence did not violate his constitutional rights.*

The State submits three reasons why the trial court correctly denied Toliver's motion to suppress:  (1) parolees have a limited expectation of privacy and may be subjected to suspicionless searches at any time under *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006); (2) the text of K.S.A. 2014 Supp. 22-3717(k) plainly intended to subject parolees to suspicionless searches of their homes; and (3) the 2016 amendments to K.S.A. 22-2317(k) are procedural changes and should therefore apply retroactively to Toliver's case. Toliver generally responds that at the time of the residential search, it was not authorized by state law.

*Standard of Review*

Normally, "[t]he standard of review for a district court's ruling on a suppression motion is bifurcated, with factual findings reviewed for substantial competent evidence and the legal conclusions reviewed with a de novo standard." *State v. Brittingham*, 296 Kan. 597, 601, 294 P.3d 263 (2013). But "[i]f the material facts are not disputed, 'the question of whether to suppress evidence becomes a question of law subject to unlimited review.'" 296 Kan. at 601. Although a defendant initiates a constitutional challenge to a

6

search or seizure by filing a motion to suppress in the district court, the State must carry the burden of proving the legality of any challenged search or seizure. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

*Discussion*

The Fourth Amendment to the United States Constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Kansas Constitution Bill of Rights, § 15, guarantees these same protections. *Bennett*, 288 Kan. at 92.

The touchstone of the Fourth Amendment is reasonableness. The Amendment does not protect against all searches and seizures. Rather it prohibits searches that are unreasonable, and whether a search is reasonable turns on the circumstances surrounding the search. *Bennett*, 288 Kan. at 92.

The Fourth Amendment issue in the instant case involves the search of a parolee by his parole officer. The United States Supreme Court has held that parolees—along with probationers and prisoners—exist on a "continuum of possible punishments," all of which "curtail an offender's freedoms" and diminish their reasonable expectation of privacy. *Samson*, 547 U.S. at 850-51; *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001). Based on the limited expectation of privacy of parolees and probationers, the Supreme Court has determined that searches of such individuals may be supported by less than probable cause in three cases: *Samson*, 547 U.S. 843; *Knights*, 534 U.S. 112; and *Griffin v. Wisconsin*, 483 U.S. 868, 879, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987). We summarize each in the order in which it was decided.

In *Griffin*, the defendant was on probation. Probation officers performed a residential search pursuant to an administrative regulation allowing any probation officer to conduct a warrantless search with a supervisor's approval and reasonable grounds to believe the presence of contraband. A state statute gave the agency authority to adopt rules and regulations. The Court applied the special needs doctrine to determine whether the search was constitutional, focusing on the State's special needs to operate a probation system. Permitting a warrantless search based on reasonable grounds was held sufficient for a probationer given the system's purposes of rehabilitation and protection of the general population:

> "We think it clear that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds,' as defined by the Wisconsin Supreme Court." *Griffin*, 483 U.S. at 875-76.

But this analysis was wholly dependent on the fact that a probation officer (as specified by the regulation) executed the search, setting the stage for the next case.

Fourteen years later in *Knights*, the defendant was also on probation. He signed a probation order permitting warrantless searches by probation or law enforcement officers at any time without requiring reasonable cause. *Knights*, 534 U.S. at 114. Per that condition, a law enforcement officer conducted a warrantless residential search based on reasonable suspicion of a crime unrelated to Knights' probationary status. In the first paragraph of its decision, the *Knights* Court framed the issue as whether "a search pursuant to this probation condition, and supported by reasonable suspicion, satisfied the Fourth Amendment." 534 U.S. at 114. The Court later stated it granted certiorari "to assess the constitutionality of searches made pursuant to this common California probation condition." 534 U.S. at 116. No authorizing state law is mentioned by the Court—or stated as required—to uphold the probation condition.

8

The *Knights* Court's first task was to decide what test applied since the *Griffin* special needs doctrine (for a probation system) would not apply to the law enforcement officer's search. The Court adopted a totality of the circumstances analysis "with the probation search condition being a salient circumstance." *Knights*, 534 U.S. at 118. Under this test, the reasonableness of a search is determined "'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" 534 U.S. at 119 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 [1999]).

When weighing Knights' individual privacy right, the Court held his probation status allowed reasonable curtailment of liberty to assure rehabilitation and protection of the public. It also held "[t]he probation order clearly expressed the search condition and Knights was unambiguously informed of it. *The probation condition thus significantly diminished Knights' reasonable expectation of privacy*." (Emphasis added.) *Knights*, 534 U.S. at 119-20. The probation condition was viewed as promoting a legitimate governmental interest in reducing recidivism, and the Court held probationers have a higher interest in concealing criminal activities and getting rid of evidence. So the Court upheld the search. 534 U.S. at 120-21.

The *Knights* Court limited its analysis to the facts presented, i.e., a warrantless search based on reasonable suspicion. And it held "the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house." *Knights*, 534 U.S. at 121. The Court did not address whether the probation condition would be upheld if the officer had lacked reasonable suspicion, even though the probation agreement Knights signed would have permitted a search without "'reasonable cause.'" 534 U.S. at 114.

Five years later in *Samson*, the rights of a parolee in this context were addressed for the first time. There, a parolee was stopped on the street and searched under a California statute by a law enforcement officer who knew the defendant was on parole. The statute required that every parolee agree in writing to warrantless searches or seizures by a parole officer or law enforcement "'at any time of the day or night . . . with or without cause.'" *Samson*, 547 U.S. at 846. In other words, suspicionless searches were required conditions in their parole agreements. The *Samson* Court applied the totality of the circumstances test adopted in *Knights*. 547 U.S. at 848.

Weighing the parolee's interest, the *Samson* Court held parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation. The Court began by summarizing some of the restrictions placed on parolees, including mandatory drug tests, restrictions on association with felons, and mandatory meetings with parole officers. Based on those restrictions, the Court held that parolees have "severely diminished expectations of privacy based on their status alone." *Samson*, 547 U.S. at 852.

The Court next considered the clearly expressed parole condition in the agreement the defendant signed. It noted that in *Knights* "we found that acceptance of a clear and unambiguous search condition 'significantly diminished Knights' reasonable expectation of privacy.'" Under the totality of the circumstances, the Court held the "petitioner did not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 852.

The State's interest, by contrast, was considered substantial because parolees are more likely to commit future offenses. The Court observed that the State also has a substantial interest in supervising parolees because of recidivism rates and promoting

10

reintegration. And the Court rejected defendant's argument that blanket discretion untethered from procedural safeguards could undermine the system, noting California's statute prohibited arbitrary, capricious, or harassing searches. *Samson*, 547 U.S. at 856. So the *Samson* Court upheld the search and ruled that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." 547 U.S. at 857.

Because *Knights* left open whether searches of probationers based on less than reasonable suspicion were constitutional, courts have split over whether probationers can be subjected to suspicionless searches. Compare *United States v. Tessier*, 814 F.3d 432 (6th Cir. 2016) (upholding suspicionless search based on probation agreement), and *Murry v. Commonwealth*, 288 Va. 117, 762 S.E.2d 573 (2014) (court-ordered probation condition was not reasonable); see also *State v. Ballard*, 874 N.W.2d 61, 76 (2016) (Sandstrom, J., dissenting; collecting cases).

Suspicionless searches of parolees, on the other hand, have been upheld post-*Samson* when a parole agreement, statute, regulation, or some combination thereof permitted the search. See, e.g., *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) (privacy interest diminished by parole agreement and Division of Parole manual); *United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir. 2007) (signed parole agreement); *Terry v. State*, 334 P.3d 953, 957 (Okla. Crim. App. 2014) (parole agreement and manual); *United States v. Pickens*, 295 Fed. Appx. 556, 558 (4th Cir. 2008) (unpublished opinion) (parole agreement and regulations); see also *State v. Bogert*, 197 Vt. 610, 619, 109 A.3d 883 (2014) (conditional reentry agreement for felon on probation).

Our court's analysis has unfolded somewhat differently because it appears to focus on whether state law authorized the suspicionless search. *Bennett*, 288 Kan. at 96 ("After *Samson*, it is clear that parolees may be subjected to suspicionless searches authorized by

state law as long as such searches are not arbitrary or done for harassment purposes."). And Toliver relies upon that caselaw—citing *Bennett* and a case upon which it relied, *United States v. Freeman*, 479 F.3d 743 (10th Cir. 2007)—as holding that warrantless and suspicionless parolee searches are only permitted when authorized by state law. So those cases bear reviewing.

In *Freeman*, the Tenth Circuit addressed the suspicionless residential search of a Kansas parolee. The court held that the *Knights-Samson* cases rested on "the parolee's diminished expectation of privacy stemming from his own parole agreement and the state regulations applicable to his case." *Freeman*, 479 F.3d at 748. And the court began examining what provisions applied in Freeman's case.

The *Freeman* court held the residential search did not comply with (1) Freeman's signed parole agreement or (2) the Kansas Department of Corrections Internal Management Policies and Procedures Manual (IMPP) because both limited the searches to parole officers—and the searchers were "ordinary law enforcement officers." *Freeman*, 479 F.3d at 748. According to the court, the search further failed to comply with the IMPP because the manual only permitted searches based on reasonable suspicion of a parole violation—and none existed. As a result, a suspicionless search would exceed reasonable expectations and be impermissible under *Samson*'s balancing test. 479 F.3d at 748.

The *Freeman* court responded to the State's argument that despite these documents' shortcomings *Samson* nevertheless permits suspicionless searches of parolees. It stated:

> "However, unlike the search provision in Mr. Freeman's parole agreement, the search
> provision in the California parole agreements in *Samson* allowed any law enforcement

officer to search for any purpose without reasonable suspicion. This significantly diminished the expectation of privacy for those on parole in the California system. *Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the *Court approved the constitutionality of such searches only when authorized under state law.* Kansas has not gone as far as California in authorizing such searches, and this search therefore was not permissible in the absence of reasonable suspicion." (Emphasis added.) *Freeman*, 479 F.3d at 748.

The italicized language that references an "authorizing" state law became a significant part of this court's *Bennett* decision two years later.

There, Nicholas Bennett was placed on probation. A condition in the district court's probation order—to which Bennett previously objected and from which he later appealed—required him to "'submit to random searches deemed necessary that Community Corrections or Law Enforcement may conduct without probable cause or need for further Court order.'" *State v. Bennett*, 288 Kan. 86, 88, 200 P.3d 455 (2009). After also considering the judge's comments at sentencing, the *Bennett* court defined the issue as whether "a condition of probation that subjects probationers to random, nonconsensual, suspicionless searches violates the United States and Kansas Constitutions." 288 Kan. at 90.

This court summarized *Griffin* and *Knights* as allowing searches of probationers based on reasonable suspicion. But it noted that neither case addressed whether a suspicionless search would satisfy constitutional requirements. *Bennett*, 288 Kan. at 95. It described *Samson* as the closest United States Supreme Court case to weigh in on that subject and held that "[a]fter *Samson*, it is clear that *parolees may be subjected to suspicionless searches authorized by state law* as long as such searches are not arbitrary or done for harassment purposes." (Emphasis added.) 288 Kan. at 96.

13

The *Bennett* court interpreted the Tenth Circuit's *Freeman* decision as reaching the "conclusion that Kansas law did not authorize suspicionless searches based on [1] the lack of Kansas statutes authorizing such searches and on" [2] the fact the IMPP only authorized warrantless searches upon "reasonable suspicion that evidence of a condition violation can be found on the person, or in the property in possession of the offender." *Bennett*, 288 Kan. at 97. The *Bennett* court also noted that under the current IMPP "parolees are told that searches must be based on a suspicion of a parole violation." 288 Kan. at 98.

While the *Bennett* court acknowledged it was not bound by a federal court's interpretation of Kansas law, it found *Freeman*'s reasoning persuasive:

> "The Kansas Legislature has not authorized suspicionless searches of probationers or parolees. Kansas' procedures for parole supervision specifically inform parolees that they have an expectation that searches will not be conducted unless an officer has a (reasonable) suspicion that such a search is necessary to enforce the conditions of parole. Put another way, parolees in Kansas have an expectation that they will not be subjected to suspicionless searches." 288 Kan. at 98.

Because probationers have a greater expectation of privacy than parolees, the court held searches of probationers must also be based on reasonable suspicion. It further held the "condition of probation in this case, requiring that Bennett submit to random, suspicionless searches, violates the defendant's constitutional rights under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights." *Bennett*, 288 Kan. at 99.

The *Bennett* court's rationale stating that "[t]he Kansas Legislature has not authorized suspicionless searches of probationers or parolees" appears to stem from the language in *Freeman* that *Samson* approved searches "'*only* when authorized under state

14

law.'" (Emphasis added.) *Bennett*, 288 Kan. at 97 (quoting *Freeman*, 479 F.3d at 748). An absence of such statutory authority should not be interpreted as dispositive, however. And we so clarify *Bennett*.

Indeed, such a rationale would be inconsistent not only with the facts in *Knights* but also with important factors in the analysis in *Samson*. In *Knights*, no search-authorizing state law was mentioned. The authority for establishing a reasonable suspicion standard for warrantless residential searches was the signed probation agreement—which the Court held was sufficient to diminish the probationer's expectation of privacy. *Knights*, 534 U.S. at 119-21.

In *Samson*, a California law required the signed parole agreement to contain a suspicionless search condition. On the road to its holding, the *Samson* Court twice stated that the *Knights* defendant's expectation of privacy was "significantly diminished" by accepting a clear and unambiguous search condition in his probation agreement. *Samson*, 547 U.S. at 849, 852. It then emphasized this condition, not the state law, in its holding regarding petitioner Samson: "Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' [citation omitted] *including the plain terms of the parole search condition*, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate." (Emphasis added.) 547 U.S. at 852. In short, the state law seems more coincidental to the Court's analysis than necessary to it, so other courts have either expressly rejected arguments that there must be a state law on point or implicitly rejected those arguments by affirming a search in the absence of a state law. See, e.g., *Terry*, 334 P.3d at 957 (rejecting parolee's argument that *Samson* holding cannot be used to justify investigatory residential search per signed parole agreement "because Oklahoma does not have a statute like California, requiring waiver of all Fourth Amendment rights as a condition of release on parole"); *Bogert*, 197 Vt. at 619 (rejecting argument that

15

suspicionless search of convicted sex-offender's home violated Fourth Amendment rights based on conditional reentry agreement offender signed allowing search at any time without requiring authorizing statute); *Pickens*, 295 Fed. Appx. at 558 (citing *Samson,* rejected parolee argument that warrantless search of residence violated Fourth Amendment rights based on regulations and terms of signed parole agreement without requiring an authorizing statute).

In sum, an authorizing state statute (or administrative regulation) presents one way in which a suspicionless search can withstand Fourth Amendment scrutiny. But it is not the only way. *Knights* remains good law, and a parole or probation condition in an agreement signed by the defendant can also establish a diminished privacy right.

Turning to Toliver's case, we apply the totality of the circumstances analysis announced in *Samson*—and acknowledged in *Bennett*, 288 Kan. at 96. That analysis requires balancing the degree to which the search intrudes upon an individual's privacy and the degree to which it is needed for the promotion of legitimate governmental interests. *Samson*, 547 U.S. at 848.

Here, there are two salient circumstances impacting parolee Toliver's expectation of privacy—a parole agreement he signed and an authorizing state law. Although it was a factor in our prior caselaw, neither party submitted or discussed the IMPP in effect at the time of Toliver's search, so those provisions are not before us.

As for the authorizing state law, under K.S.A. 2014 Supp. 22-3717(i), the prisoner review board had authority to "impose any condition they deem necessary to insure public safety [and] aid in the reintegration of the inmate into the community." And the board imposed such a necessary condition—allowing residential searches by Toliver's

parole officers "with or without a search warrant and with or without cause"—in the parole agreement he signed.

We acknowledge K.S.A. 2014 Supp. 22-3717 also specifically allows suspicionless searches by parole officers. But the statute—now amended—did not apply as clearly to residential searches. Subsection (k)(2) provided:

> "Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment." K.S.A. 2014 Supp. 22-3717(k)(2).

As mentioned, the *Toliver* panel majority and the dissent reached differing conclusions on how to interpret this subsection. But the panel members' disagreement about statutory interpretation need not be resolved when the totality of the circumstances analysis is correctly performed here.

Toward that end, when we evaluate Toliver's individual privacy interest, we readily conclude he had actual notice pursuant to the agreement—which he signed—that he was subject to suspicionless residential searches by his parole officers as a condition of his parole. See *Samson*, 547 U.S. at 850 ("'The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.'"). The signed parole agreement alone can be enough to uphold the parole officer's suspicionless search. See, e.g., *Terry*, 334 P.3d at 957 (holding "resolution of this claim rests on Terry's diminished expectation of privacy dictated by the terms of his own parole agreement"; "[w]hile Terry enjoyed the

benefit of parole, he was required to suffer the burdens he agreed to in his parole agreement, including being subject to search at any place or time").

And as stated earlier, subsection (i) of K.S.A. 2014 Supp. 22-3717 gave the prisoner review board authority to add "any condition" deemed necessary for public safety or to aid in reintegration. Under these circumstances, Toliver did not have a legitimate expectation of privacy. By contrast, the State's interest in supervising parolees to prevent recidivism and promote reintegration is substantial. See *Samson*, 547 U.S. at 853. Therefore, the suspicionless search of Toliver's residence did not violate the Fourth Amendment.

As the Fourth Circuit Court of Appeals said about a suspicionless search of a parolee's residence in *United States v. Pickens*:

> "[W]e find that the warrantless search of Pickens' trailer did not violate the Fourth Amendment. Like the parolee in *Samson,* Pickens had signed a parole agreement acknowledging he would comply with all rules and regulations prescribed by the Commissioner of the West Virginia Division of Corrections. Pickens signed a copy of the rules and regulations which included the provisions requiring him to permit his parole officer to visit his residence without obstruction and to *submit to a warrantless search of* his person and *home for supervision purposes at any time. Under the totality of the circumstances, considering Pickens' undisputed awareness of the parole rules and regulations requiring him to submit to a warrantless search and his agreement to abide by these provisions as a condition of parole, and balancing Pickens' diminished expectation of privacy by virtue of his status as a parolee against the State's legitimate interest in supervising parolees, we conclude that the warrantless search of Pickens' home did not violate the Fourth Amendment."* (Emphasis added.) 295 Fed. Appx. at 558.

We reverse the Court of Appeals and affirm the district court and Toliver's conviction. Because of this holding, we need not address the remaining arguments.