No. 119,125

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERESA GAYLE HINNENKAMP,
*Appellant*.

SYLLABUS BY THE COURT

1.

Determining a statute's constitutionality is a question of law subject to unlimited appellate review.

2.

K.S.A. 2018 Supp. 21-6607(c)(6), which requires district courts to impose random drug and alcohol testing as a condition of probation, is exempt from the Fourth Amendment's general warrant requirement because (1) the special needs of the probation system make the warrant and probable cause requirement impracticable, and (2) the primary purpose of random drug and alcohol testing for probationers is distinguishable from the State's general interest in crime control.

3.

When we weigh a Kansas probationer's diminished expectation of privacy against the State's interests in promoting rehabilitation and probation compliance, and we consider the efficacy of random suspicionless drug and alcohol testing, it is reasonable to permit a court services officer or community correctional services officer to order a

probationer to submit to random drug and alcohol testing, even without any suspicion of wrongdoing.

4.

K.S.A. 2018 Supp. 21-6607(c)(6) does not on its face violate the Fourth Amendment to the United States Constitution or § 15 of the Kansas Constitution Bill of Rights.

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed July 5, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

MALONE, J.:  Teresa Gayle Hinnenkamp appeals the district court's order that she submit to random drug and alcohol testing as a condition of her probation for her conviction of aggravated escape from custody. She claims that K.S.A. 2018 Supp. 21-6607(c)(6), which requires district courts to impose random drug and alcohol testing as a condition of probation, violates the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. For the reasons stated in this opinion, we reject Hinnenkamp's claims and affirm the district court's judgment.

On October 26, 2017, pursuant to a plea agreement, Hinnenkamp pled guilty to one count of aggravated escape from custody. She had failed to return to a work release facility where she had been assigned as the result of her conviction in another case. The presentence investigation report showed that Hinnenkamp had a lengthy criminal history

2

including three convictions of driving under the influence and a conviction of unlawful possession of drug paraphernalia. She was on felony bond when she committed the new crime. On December 8, 2017, the district court sentenced her to 18 months' imprisonment but granted probation for 24 months to be supervised by community corrections.

As a condition of probation, the judge ordered Hinnenkamp to "not possess, use or consume alcohol, illegal drugs or prescription drugs without a prescription." He also ordered her to "submit to random breath, blood or urine testing, as directed by [her] probation officer, and in any event, no less than once every 30 days." Hinnenkamp objected to the probation condition and briefly argued that she should not be subjected to random drug testing by her probation officer, but she did not expressly identify any constitutional grounds to support her claim. The district court overruled the objection but clarified that if Hinnenkamp did not test positive during her first year of probation, later testing would "be at probation's discretion." Hinnenkamp timely appealed her sentence.

This appeal centers on the mandatory conditions of probation in K.S.A. 2018 Supp. 21-6607(c), which states, in part:

> "In addition to any other conditions of probation . . . the court shall order the defendant to comply with each of the following conditions:
> . . . .
> "(6) be subject to random, but reasonable, tests for drug and alcohol consumption as ordered by a court services officer or community correctional services officer."

Hinnenkamp argues that K.S.A. 2018 Supp. 21-6607(c)(6) violates her rights under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights because it subjects her to searches unsupported by reasonable suspicion. In response, the State argues that Hinnenkamp's argument is (1) improperly raised for the first time on appeal; (2) not ripe, so this court lacks jurisdiction to consider it; and (3) so inadequately briefed that Hinnenkamp has waived it. As for the merits of

3

Hinnenkamp's argument, the State contends that K.S.A. 2018 Supp. 21-6607(c)(6) is constitutional, both on its face and as applied to Hinnenkamp. We will begin by addressing the State's reasons why we should not reach the merits of this appeal.

*Preservation*

To begin with, the State asserts that Hinnenkamp's constitutional claim is improperly raised for the first time on appeal. Although Hinnenkamp briefly objected to the probation condition for drug testing at her sentencing hearing, she did not refer to either the Kansas or federal Constitution to support her claim. We agree with the State that Hinnenkamp is asserting her constitutional claim for the first time on appeal.

Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). But there are several exceptions to this general rule, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Hinnenkamp asserts that this court should apply the first two exceptions to allow her to assert her constitutional claim for the first time on appeal. In response, the State argues that although the constitutionality of a statute may be a question of law, the constitutionality of a search requires factual findings about the circumstances of the search, and the district court has made no such factual findings in Hinnenkamp's case.

4

The State is correct. Whether Hinnenkamp can bring her constitutional claim for the first time on appeal depends on whether she is bringing a facial challenge to the constitutionality of the statute in question or an as-applied challenge. This is an important distinction because although "classifying a lawsuit as facial or as-applied . . . does not speak at all to the substantive rule of law necessary to establish a constitutional violation," it does "affect[] the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'" *Bucklew v. Precythe*, 587 U.S. ___, 139 S. Ct. 1112, 1127, 203 L. Ed. 2d 521 (2019).

A facial challenge is "an attack on a statute itself as opposed to a particular application" of that law. *Los Angeles v. Patel*, 576 U.S. ___, 135 S. Ct. 2443, 2449, 192 L. Ed. 2d 435 (2015). In comparison, as its name suggests, an as-applied challenge contests the application of a statute to a particular set of circumstances, so resolving an as-applied challenge "necessarily requires findings of fact." See *State v. Farmer*, No. 98,997, 2008 WL 5401338, at *4 (Kan. App. 2008) (unpublished opinion); see also *Sibron v. New York*, 392 U.S. 40, 59-62, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) ("The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case.").

Hinnenkamp has not expressly articulated whether she brings her constitutional claim as a facial challenge to the statute or an as-applied challenge. But some arguments in her brief lead us to conclude that she is asserting a facial challenge to the constitutionality of the statute. For instance, in setting forth the standard of review, Hinnenkamp asserts that this court "presumes the constitutionality of a statute" and resolves all doubts in favor of its validity. She acknowledges that courts "'must interpret a statute'" in a manner that renders it constitutional if there is any reasonable construction that will maintain the Legislature's apparent intent. In her prayer for relief, she specifically asks us to "find K.S.A. 201[8] Supp. 21-6607(c)(6) unconstitutional."

To the extent that Hinnenkamp means to bring an as-applied challenge to K.S.A. 2018 Supp. 21-6607(c)(6), requiring findings of fact by the district court, we agree with the State that her constitutional claim is not properly preserved for appeal. But her facial challenge to the constitutionality of K.S.A. 2018 Supp. 21-6607(c)(6) arises on admitted facts not dependent on the circumstances of any search she may have experienced. And resolution of the issue is finally determinative of this case. Because a facial constitutional challenge fits within the first exception to the general rule that we do not consider issues for the first time on appeal, we will consider Hinnenkamp's facial challenge to K.S.A. 2018 Supp. 21-6607(c)(6).

*Ripeness*

Next, the State asserts that this issue is not ripe for decision, so this court lacks jurisdiction to consider it. Hinnenkamp filed no reply brief and has not addressed ripeness. The State first points out that the district court ordered random drug and alcohol testing at least every 30 days, but only during the first year of Hinnenkamp's probation which she has already completed. The State asserts "there is no indication that this condition was ever applied to [Hinnenkamp]." But the State's argument misconstrues the district court's probation order. The district court ordered Hinnenkamp to submit to random drug testing at least once every 30 days during the first year of her probation. If Hinnenkamp did not test positive during her first year of probation, later testing would be at the probation officer's discretion. So although Hinnenkamp may no longer need to submit to drug testing at least every 30 days, she is still subject to random testing at her probation officer's discretion as required by K.S.A. 2018 Supp. 21-6607(c)(6).

The State also contends that this appeal is not properly before us because there are "other avenues through which random testing could have been proper," including (1) the probable conditions of probation imposed upon Hinnenkamp in another case not before this court, (2) the supposition that she "also may have been subject" to random testing

6

because of her signing a probation agreement, and (3) the assertion that she may have been subject to drug testing "through the development of reasonable suspicion or even probable cause to request testing." But the State's argument is speculative and the record before us contains no evidence that any of these "other avenues" occurred. And our Supreme Court recently rejected a similar argument to the constitutionality of K.S.A. 2014 Supp. 8-1025, finding that such an argument to the facial challenge of a statute "use[s] too wide a lens." See *State v. Ryce*, 303 Kan. 899, 915, 368 P.3d 342 (2016) ("[W]e do not consider the entire universe of possible scenarios, we must instead look to the circumstances actually affected by the challenged statute. [Citation omitted.]").

Finally, as we have already discussed, a facial challenge to the constitutionality of a statute is "an attack on a statute itself" and thus is a pure question of law. See *Patel*, 135 S. Ct. at 2447, 2449; *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 852, 370 P.3d 1170 (2016). K.S.A. 2018 Supp. 21-6607(c)(6) is currently effective, and analysis of its facial constitutionality requires no additional factual development. As a result, we conclude that Hinnenkamp's facial challenge to the statute is ripe for appeal. See *KNEA v. State*, 305 Kan. 739, 748, 387 P.3d 795 (2017).

*Adequacy of briefing*

The State also asserts that Hinnenkamp has waived her constitutional claim by inadequate briefing. Inadequate briefing—by the failure to establish jurisdiction, to specify a constitutional provision underlying a challenge, to provide or discuss pertinent legal authority, or to tie analysis to the specific question before the court—may lead Kansas appellate courts to deem an issue waived and abandoned. See *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018). The State argues that Hinnenkamp's briefing is so inadequate that this court should do the same. To show the inadequacy, the State distinguishes the caselaw that Hinnenkamp cites, it points out intervening legislation, and it asserts that Hinnenkamp does not argue the specifics of her own case.

7

The State's arguments miss the point of inadequate briefing. First, Hinnenkamp need not argue the specifics of any drug testing administered to her in asserting her claim that K.S.A. 2018 Supp. 21-6607(c)(6) is unconstitutional on its face. The remainder of the State's assertions challenge the *substance* of Hinnenkamp's brief, rather than its adequacy. Put another way, the State does not claim that Hinnenkamp makes no arguments at all; it merely asserts that her arguments are wrong or are not framed to address the points the State believes are salient. We conclude that Hinnenkamp has not waived or abandoned her constitutional claim based on inadequate briefing.

Because none of the State's arguments persuade us to dispose of this case on the threshold issues of preservation, ripeness, or inadequate briefing, we turn to the merits of Hinnenkamp's constitutional challenge.

*The facial constitutionality of K.S.A. 2018 Supp. 21-6607(c)(6)*

Hinnenkamp claims that K.S.A. 2018 Supp. 21-6607(c)(6), which requires district courts to impose random drug and alcohol testing as a condition of probation, violates the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. Determining a statute's constitutionality is a question of law subject to unlimited appellate review. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015).

"'We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, we must interpret a statute in a manner that renders it constitutional if there is any reasonable construction that will maintain the legislature's apparent intent.' [Citations omitted.]" *Gonzalez*, 307 Kan. at 579. As the party challenging the constitutionality of K.S.A. 2018 Supp. 21-6607(c)(6), Hinnenkamp must overcome its presumptive constitutionality. 307 Kan. at 579.

8

We begin our analysis by turning to the text of the applicable constitutional provisions. The Fourth Amendment to the United States Constitution provides:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

Hinnenkamp asserts—and the State does not contest her assertion—that the probation condition required by K.S.A. 2018 Supp. 21-6607(c)(6) allows a suspicionless search of a probationer. Both the United States Supreme Court and the Kansas Supreme Court have held that breath, blood, and urine tests are searches under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. See *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2173, 195 L. Ed. 2d 560 (2016) ("[O]ur cases establish that the taking of a blood sample or the administration of a breath test is a search."); *Skinner v. Railway Labor Executives' Assn*, 489 U.S. 602, 617, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (holding that the collection and testing of urine constitutes a search under the Fourth Amendment); *Ryce*, 303 Kan. at 912 ("[A] breath, blood, or urine test is . . . a search.").

Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *Neighbors*, 299 Kan. at 239. Those exceptions include:  consent; search incident to lawful arrest; stop and frisk; probable cause with exigent circumstances, of which hot pursuit is one example; emergency doctrine; inventory searches; plain view/plain feel; and administrative searches of closely regulated businesses. 299 Kan. at 239. And in *State v. Toliver*, 307 Kan. 945, Syl. ¶ 5, 417 P.3d 253 (2018), our Supreme Court held that under the facts of that case, "the warrantless and suspicionless search of a parolee's home did not violate the

Fourth Amendment of the United States Constitution or Section 15 of the Kansas Constitution Bill of Rights."

Hinnenkamp points out that under K.S.A. 2018 Supp. 21-6607(c)(5), the court shall order the defendant, as a condition of probation, to be subject to searches of the defendant's person, effects, vehicle, residence, and property by a probation officer "based on reasonable suspicion of the defendant violating conditions of probation or criminal activity." Hinnenkamp argues that K.S.A. 2018 Supp. 21-6607(c)(6) is unconstitutional because it provides that the court shall order the defendant, as a condition of probation, to be subject to random drug and alcohol testing by a probation officer without reasonable suspicion of the defendant violating the conditions of probation or engaging in criminal activity. Thus, the narrow question before us is whether subjecting probationers to suspicionless drug and alcohol testing, as required by K.S.A. 2018 Supp. 21-6607(c)(6), violates the protections guaranteed by the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights.

Before addressing Hinnenkamp's claims, we note that another panel of this court, in two separate opinions filed on the same day, examined arguments very similar to those now before us, and in each case the panel upheld the constitutionality of random drug and alcohol testing. See *State v. Nwoji*, No. 117,721, 2018 WL 4039406 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. ___ (February 28, 2019); *State v. Tran*, No. 117,880, 2018 WL 4039192 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* September 21, 2018. Hinnenkamp acknowledges the *Tran* opinion but argues that the court erred in holding that random drug and alcohol testing is constitutional.

The similarities between the arguments presented here and those decided in *Nwoji* and *Tran* are striking. The Sedgwick County District Court convicted Wilfred M. Nwoji Jr. and Hau T. Tran in unrelated criminal cases and sentenced each to probation. At their sentencing hearings, the district court ordered the probation condition that Nwoji and

10

Tran, at their own expense, would "'submit to random breath, blood or urine testing, as directed by probation and at [a] minimum once every 30 days.'" *Nwoji*, 2018 WL 4039406, at *1; see *Tran*, 2018 WL 4039192, at *1. Nwoji and Tran each objected to the condition and argued for the first time on appeal that the statute requiring imposition of the condition, K.S.A. 2017 Supp. 21-6607(c)(6), violates the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. Because K.S.A. 2017 Supp. 21-6607(c)(6) addressed by the court in *Nwoji* and *Tran* is identical to K.S.A. 2018 Supp. 21-6607(c)(6) at issue here, we will address only K.S.A. 2018 Supp. 21-6607(c)(6) for the rest of this opinion.

In Nwoji's and Tran's appeals, as it does now in Hinnenkamp's appeal, the State argued that (1) this court should not consider the constitutional claim for the first time on appeal; (2) the issue was not ripe for decision and therefore the appellant lacked standing and this court lacked jurisdiction over the appeal; and (3) the appellant had waived the argument by inadequate briefing. The *Nwoji* and *Tran* panel addressed these threshold arguments before reaching the merits. *Nwoji*, 2018 WL 4039406, at *2-5; *Tran*, 2018 WL 4039192, at *2-5.

In reaching the merits of the constitutional claim, the *Nwoji* and *Tran* panel determined that random drug and alcohol testing by probation officers is exempt from the general warrant requirement under the "special needs" exception to the warrant requirement. *Nwoji*, 2018 WL 4039406, at *6; *Tran*, 2018 WL 4039192, at *6. The *Nwoji* and *Tran* panel performed a balancing test under the totality of the circumstances and weighed the probationers' privacy interests at stake against the government's interest in conducting random drug and alcohol testing of probationers. *Nwoji*, 2018 WL 4039406, at *6-8; *Tran*, 2018 WL 4039192, at *6-8. The *Nwoji* and *Tran* panel concluded that the balancing test weighed in favor of the State to permit the random drug and alcohol testing of probationers. *Nwoji*, 2018 WL 4039406, at *8; *Tran*; 2018 WL 4039192, at *8.

11

We now return to Hinnenkamp's claims. She argues that random drug and alcohol testing by probation officers as required by K.S.A. 2018 Supp. 21-6607(c)(6) violates the federal and Kansas Constitutions and that *Tran* was wrongly decided. She refers us to *State v. Bennett*, 288 Kan. 86, 98, 200 P.3d 455 (2009), a case decided before K.S.A. 2018 Supp. 21-6607(c)(6) was enacted, which held that because the Kansas Legislature had not authorized suspicionless searches of probationers, a condition of probation requiring a probationer to submit to such a search violated the probationer's constitutional rights under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights.

The State asserts that random drug and alcohol testing by probation officers is exempt from the general warrant requirement under the "special needs" exception to the warrant requirement. In the alternative, the State argues that K.S.A. 2018 Supp. 21-6607(c)(6) is exempt from the general warrant requirement because it is a "limited administrative search." The State also points out that the Kansas Legislature enacted K.S.A. 2018 Supp. 21-6607(c)(6) after our Supreme Court decided *Bennett*, so the holding in that case does not control here.

As we said before, the Fourth Amendment protects against "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause." Although a warrantless search is presumed unreasonable, there are "'a few specifically established and well-delineated exceptions'" to the warrant requirement. *Patel*, 135 S. Ct. at 2452. Applicable here is the "special needs" exception, which applies when "'"special needs . . . make the warrant and probable-cause requirement impracticable,"' [citations omitted] and where the 'primary purpose' of the searches is '[d]istinguishable from the general interest in crime control.'" See *Patel*, 135 S. Ct. at 2452. Stated differently, this exception applies when (1) the special needs of the probation system make the warrant and probable cause requirement impracticable, and (2) the primary purpose of the random drug and alcohol testing for probationers is distinguishable from the State's general interest in crime control. We will examine these two elements in reverse order.

12

As to the second element, the *Nwoji* and *Tran* panel addressed whether the primary purpose of K.S.A. 2018 Supp. 21-6607(c)(6) is crime control:

"Drug and alcohol testing under K.S.A. 201[8] Supp. 21-6607(c)(6) is part of a statutory scheme for the supervision of probationers. See [*Griffin v. Wisconsin*, 483 U.S. 868, 873-74, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)]; see also K.S.A. 201[8] Supp. 21-6607 generally. In addition, its plain language only authorizes probation officers to order drug and alcohol testing, not law enforcement officers. It therefore likely qualifies as a special need beyond law enforcement." *Nwoji*, 2018 WL 4039406, at *6; *Tran*, 2018 WL 4039192, at *6.

In addition, the *Nwoji* and *Tran* panel recognized that "[d]rug and alcohol testing is a tool for monitoring probationers" and "[t]he State's reason for random, suspicionless drug and alcohol testing of probationers is the successful rehabilitation of the offender." *Nwoji*, 2018 WL 4039406, at *8; *Tran*, 2018 WL 4039192, at *8. The same reasoning applies to Hinnenkamp. She is subject to random drug and alcohol testing only by her community correctional services officer, not by any other type of law enforcement officer. The failure of a random drug and alcohol test may lead to the revocation of Hinnenkamp's probation, but nothing in the record suggests that such a test failure would lead to the State filing new criminal charges against Hinnenkamp. Thus, the primary purpose of K.S.A. 2018 Supp. 21-6607(c)(6) is not to control crime.

As for the first element of this exception, Hinnenkamp does not explicitly dispute that the statutory scheme controlling probationers has "'special needs [that] make the warrant and probable-cause requirement impracticable.'" See *Patel*, 135 S. Ct. at 2452. Rather, she argues that the *Tran* panel "unjustifiably extended the rationale and holding in *Griffin*, which merely upheld a lower standard of reasonableness than that of probable cause and did not endorse suspicionless searches of probationers by probation officers." But in *Griffin*, the United States Supreme Court was clear: "A State's operation of a probation system, like its operation of a school, government office or prison, or its

13

supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-74, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987). The *Griffin* Court held:

> "A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create. [Citations omitted.]" 483 U.S. at 876.

Given the clear language in *Griffin*, we conclude, as did the *Nwoji* and *Tran* panel, that K.S.A. 2018 Supp. 21-6607(c)(6) is exempt from the Fourth Amendment's general warrant requirement because (1) the special needs of the probation system make the warrant and probable cause requirement impracticable, and (2) the primary purpose of random drug and alcohol testing for probationers is distinguishable from the State's general interest in crime control. Because we so hold, we do not address the State's alternative argument that K.S.A. 2018 Supp. 21-6607(c)(6) is exempt from the general warrant requirement because it is a "limited administrative search."

But our analysis does not end here. As the *Nwoji* and *Tran* panel recognized, once a statute meets the requirements of the special needs exception, "the court then performs a balancing test," considering the totality of the circumstances to determine whether the authorized search is reasonable. See *Nwoji*, 2018 WL 4039406, at *6; *Tran*, 2018 WL 4039192, at *6; see also *United States v. Knights*, 534 U.S. 112, 118-19, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) (setting forth balancing test). The court weighs "the privacy interest at stake and the degree of intrusion on that privacy interest . . . against the

14

government's interests and the efficacy of the scheme in meeting those interests." *Nwoji*, 2018 WL 4039406, at *6; *Tran*, 2018 WL 4039192, at *6.

As Hinnenkamp concedes, a person's reasonable expectation of privacy is less if he or she is under state control. See *Knights*, 534 U.S. at 119; *Griffin*, 483 U.S. at 875. K.S.A. 2018 Supp. 21-6607(c)(6) applies only to probationers, so we must focus only on probationers' privacy interests. "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'" *Knights*, 534 U.S. at 119.

Moreover, both the United States Supreme Court and the Kansas Supreme Court have recognized that knowledge of status-based privacy limitations matters in evaluating a reasonable expectation of privacy. In *Samson v. California*, 547 U.S. 843, 851-52, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006), the United States Supreme Court held that "the extent and reach" of state statutes and regulations limiting parolees' privacy "clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone." And in *Knights*, the United States Supreme Court held that a probation search condition of which Knights was "unambiguously informed . . . significantly diminished Knights' reasonable expectation of privacy." 534 U.S. at 119-20. Even more broadly, the Kansas Supreme Court has held that "an authorizing state statute (or administrative regulation) presents one way in which a suspicionless search can withstand Fourth Amendment scrutiny." *Toliver*, 307 Kan. at 956-57. Although these cases were as-applied challenges to specific searches, unlike the facial challenge here, that distinction does not diminish the applicability of the broader premise that the knowledge of a diminished privacy right negates, at least to some extent, the reasonableness of any related expectation of privacy.

As the *Nwoji* and *Tran* panel noted, in 2012, the Kansas Legislature amended K.S.A. 21-6607 to allow suspicionless drug and alcohol testing of probationers. *Nwoji*,

15

2018 WL 4039406, at *7; *Tran*, 2018 WL 4039192, at *7. Thus, since 2012, K.S.A. 21-6607 has clearly stated that Kansas probationers will face "random, but reasonable," suspicionless drug and alcohol testing. The Legislature's action requiring probationers in Kansas to submit to random suspicionless drug and alcohol testing significantly diminishes a probationer's reasonable expectation of privacy about such searches.

This legislative action also undermines the applicability of *Bennett*, on which Hinnenkamp relies. In *Bennett*, the Kansas Supreme Court held that a condition of probation requiring a probationer to submit to random, suspicionless searches violated the probationer's constitutional rights under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights. 288 Kan. 86, Syl. ¶ 6. But central to the holding in *Bennett* was the fact that when the case was decided, the Kansas Legislature had not authorized suspicionless searches of probationers and parolees in order to place these persons on notice that they could be subjected to such a search. 288 Kan. at 98. As the court stated:

> "The Kansas Legislature has not authorized suspicionless searches of probationers and parolees. Kansas' procedures for parole supervision specifically inform parolees that they have an expectation that searches will not be conducted unless an officer has a (reasonable) suspicion that such a search is necessary to enforce the conditions of parole. Put another way, parolees in Kansas have an expectation that they will not be subjected to suspicionless searches.
>
> It logically follows from this conclusion that because probationers have a greater expectation of privacy than parolees, searches of probationers in Kansas must also be based on a reasonable suspicion. Thus, the condition of Bennett's probation subjecting him to random, nonconsensual, suspicionless searches violates his rights under the Fourth Amendment and the Kansas Constitution Bill of Rights." 288 Kan. at 98.

But since *Bennett*, the Kansas Legislature has enacted law requiring both probationers and parolees to submit to suspicionless searches. In addition to K.S.A. 2018 Supp. 21-6607(c)(6) at issue here, K.S.A. 2018 Supp. 22-3717(k)(2) provides that

16

parorees and persons on postrelease supervision "are, and shall agree in writing to be, subject to searches of the person and the person's . . . property . . . with or without cause." Now, in Kansas, probationers and parolees are on notice that an authorizing statute subjects them to suspicionless searches, including random drug and alcohol testing, which "presents one way in which a suspicionless search can withstand Fourth Amendment scrutiny." *Toliver*, 307 Kan. at 956-57. Thus, the legal landscape that led to the result in *Bennett* no longer exists, and *Bennett* does not control here.

Turning to the State's interest and the efficacy of K.S.A. 2018 Supp. 21-6607(c)(6) in satisfying that interest, the *Nwoji* and *Tran* panel soundly reasoned:

> "The State . . . has a substantial interest in monitoring probationers to promote their rehabilitation and compliance with probation conditions.
>
> "Drug and alcohol testing is a tool for monitoring probationers, but its efficacy relies heavily on being random. Random testing deters probationers from drug and alcohol use because a probation officer could discover this use at any time. It also provides the probation officer with important information to determine whether rehabilitation is taking place. Imposing a reasonable suspicion standard would hurt the efficacy of this testing, because detecting drug and alcohol use simply through observation can be difficult.
>
> "The State's reason for random, suspicionless drug and alcohol testing of probationers is the successful rehabilitation of the offender. This significant State interest outweighs a probationer's reduced privacy rights. As a result, drug and alcohol testing under K.S.A. 201[8] Supp. 21-6607(c)(6) is constitutional under the Fourth Amendment and § 15. [Citations omitted.]" *Nwoji*, 2018 WL 4039406, at *8; *Tran*, 2018 WL 4039192, at *8.

We agree. The State has a substantial interest in monitoring probationers to promote their rehabilitation and compliance with probation conditions. And an important part of the job is making sure that probationers abstain from using alcohol when ordered by the court and that they always abstain from the illegal use of drugs. The only way to

17

ensure compliance with these orders is through reasonable testing. Drug and alcohol testing is most effective when the tests are administered randomly. That way, the probationer knows that he or she must completely abstain from the use of alcohol or illegal drugs because the probationer can be tested at any time for a violation.

In sum, when we weigh a Kansas probationer's diminished expectation of privacy against the State's interests in promoting rehabilitation and probation compliance, and we consider the efficacy of random suspicionless drug and alcohol testing, it is reasonable to permit a court services officer or community correctional services officer to order a probationer to submit to random drug and alcohol testing, even without any suspicion of wrongdoing. Thus, we conclude that K.S.A. 2018 Supp. 21-6607(c)(6), which requires district courts to impose random drug and alcohol testing as a condition of probation, does not on its face violate the Fourth Amendment to the United States Constitution or § 15 of the Kansas Constitution Bill of Rights.

Affirmed.