NOT DESIGNATED FOR PUBLICATION

No. 125,866

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANNON L. ALBRIGHT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Marion District Court; SUSAN C. ROBSON, judge. Submitted without oral argument. Opinion filed April 26, 2024. Conviction reversed, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, P.J., ATCHESON and BRUNS, JJ.


PER CURIAM: A jury sitting in Marion County District Court convicted Shannon L. Albright of criminal possession of a weapon, a felony violation of K.S.A. 21-6304. The district court erroneously instructed the jurors they could find Albright guilty if he "recklessly" possessed a pistol found in his grandmother's apartment where he was temporarily residing. As a result, the State may have secured the guilty verdict on a less rigorous form of criminal intent than the statute requires. Under the circumstances, we cannot dismiss the error as harmless and, therefore, reverse Albright's conviction, vacate his sentence, and remand for a new trial.

1

Albright has raised other issues on appeal. We find them to be either moot given the relief we have granted or without sufficient merit to warrant any additional relief.

FACTUAL AND PROCEDURAL HISTORY

After being convicted of aggravated battery, Albright was prohibited from possessing a firearm under K.S.A. 2021 Supp. 21-6304(a)(3)(A). In early 2022, Albright was released from prison and began serving a term of postrelease supervision on a conviction the year before for unlawfully possessing a weapon. Upon his release, Albright moved in with his grandmother Sonja Deist. He slept on a makeshift bed on the floor of the living room next to his grandmother's recliner. Deist used the only bedroom in the apartment.

About two weeks later, Kansas Department of Corrections officers accompanied by Marion County Sheriff's deputies appeared at the apartment to conduct a search of Albright and the premises at the request of his parole officer. One of the law enforcement officers found a loaded pistol in a pocket on the side of the recliner. The officers also found a plastic box for the pistol among Albright's possessions in the bedroom closet. In the box were photographs of Albright's dog and other items.

When an officer removed the pistol from the recliner pocket, Albright expressed surprise that there was a firearm in the apartment. Deist told the officers the pistol was hers and had been given to her for self-protection sometime earlier since she lived alone. Deist said she could not remember the name of the person who gave her the pistol. The officers arrested Albright.

The State charged Albright with one count of unlawful possession of a weapon, i.e., the pistol, a severity level 8 nonperson felony violation of K.S.A. 2021 Supp. 21-6304(a)(3)(A). The jury heard evidence in trial in early October 2022. Several of the

2

officers testified about their search and the discovery of the pistol. They recounted what Albright and Deist said at the time, and the jurors saw a bodycam video of the search. Deist testified as a defense witness and told the jurors her daughter had given her the pistol for protection. She said she wasn't familiar with guns and had forgotten about the pistol. Deist told the jurors her daughter had since died. Albright also testified and explained he had no idea his grandmother had a firearm in her home. He said she knew he was not supposed to be around guns. And Albright testified Deist's daughter was known to have firearms, so he was concerned Deist might have acquired some of them after her death. The jurors found Albright guilty.

The district court later sentenced Albright and ordered him to serve 19 months in prison followed by postrelease supervision for 12 months, reflecting a mitigated guidelines punishment given Albright's criminal history. Albright has appealed the conviction on multiple grounds. In taking up those points, we augment our introductory case history as necessary.

LEGAL ANALYSIS

*Jury Instructions*

We first consider Albright's challenge to the jury instructions setting out the elements of the crime the State had to prove to convict him under K.S.A. 2021 Supp. 21-6304(a)(3). As charged against Albright, the statute proscribes "[c]riminal possession of a weapon" by a person who has been convicted of aggravated battery, among other serious felonies, if "less than eight years have elapsed" since the person completed the sentence for the underlying conviction. K.S.A. 2021 Supp. 21-6304(a)(3). Critical to Albright's challenge and our analysis, "possession" is a defined term in the criminal code and at the times relevant here meant "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the

3

person has some measure of access and right of control." K.S.A. 2021 Supp. 21-5111(v).[1]

[1] Effective July 1, 2022, about four months after Albright was arrested, the Legislature amended the definition of "possession" to read: "knowingly having joint or exclusive control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 21-5111(v). The change removed "intent" to have control and focused the statutory language solely on "knowingly" controlling an item consistent with the earlier requirement of having control "with knowledge." The newer version does not apply to Albright. See *State v. Armstrong*, 238 Kan. 559, 566, 712 P.2d 1258 (1986). But even if it did, it would not undermine his argument on the instructional error.

The statutory definition of "possession" must be incorporated into K.S.A. 2021 Supp. 21-6304 to establish the elements of the crime, including the required mental state or mens rea. The exercise demonstrates that at the time Albright was charged the State had to prove a defendant had knowledge of or an intent to control a firearm or knowingly kept a firearm in a place where he or she could readily get it. See *State v. Rizal*, 310 Kan. 199, 206-07, 445 P.3d 734 (2019) (finding "imbedded" mental state in statutory definition of possession becomes part of required proof to convict for possession of controlled substances).

The Kansas criminal code also defines three "culpable mental states" that may supply the bad intent or mens rea for convictions of crimes that require such a state of mind. So a defendant must act "intentionally," "knowingly," or "recklessly," depending on the statutory elements of the particular crime. K.S.A. 21-5202(a). If the statutory elements do not set out a particular mental state, proof of any of the three will suffice to support a conviction. K.S.A. 21-5202(e).

Apparently without carefully considering the statutory definition of "possession," the district court concluded that the State could convict Albright by proving any of the mental states, including recklessness. And the district court crafted jury instructions that

so informed the jurors despite Albright's objection to including a definition of "recklessly." The district court provided these two instructions to the jurors:

"INSTRUCTION NO. 4

"In Count 1, the defendant is charged with criminal possession of a weapon by a convicted felon. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant possessed a weapon.

"2. The defendant within the 8 years preceding such possession has been convicted of a felony and cannot possess a firearm.

"3. The defendant was not found to be in possession of a firearm at the time of the prior crime, and has not had the prior conviction expunged or been pardoned for such crime.

"4. This act occurred on or about the 23rd day of February, 2022 in Marion County, Kansas.

"'Possession' means having joint or exclusive control over an item with knowledge or and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.

"'Weapon' means a firearm or knife."

and

"INSTRUCTION NO. 6

"The State must prove that the defendant committed the crime of criminal possession of a weapon by a convicted felon intentionally, knowingly, or recklessly.

"A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State.

"A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist."

5

On appeal, Albright has renewed his objection as to how the district court treated the required mental states for conviction of unlawful possession of a weapon. We deploy a multistep review and look at preservation of and jurisdiction over the claimed error, legal suitability of the challenged instructions, factual support for the instructions, and the prejudicial effect of any error. *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023); *State v. Blansett*, 309 Kan. 401, 408, 435 P.3d 1136 (2019). Here, we may quickly dispense with the first and third components. Albright preserved his instructional challenge in the district court, and an otherwise appropriate instruction addressing culpable mental state was factually proper.

Although Instruction No. 6 accurately characterizes the three culpable mental states, it was legally inappropriate because it permitted the jurors to convict Albright if he recklessly possessed the pistol. The statutory definition of "possess" requires knowing and possibly intentional control of the gun but conspicuously does not include or even suggest recklessness. As a result, there was some tension between Instruction No. 5 with its definition of "possession," paralleling that in K.S.A. 21-5111(v), and Instruction No. 6 with its explanation of "recklessly" as a sufficient mental state to convict. The discordance might foster confusion. But there is a more fundamental legal defect.

The required mental state forms a statutory element of the crime. And the State bears the burden of proving every element of the charged crime beyond a reasonable doubt to convict Albright or any other defendant. The obligation—with its especially stringent standard—entails a constitutional due process protection for criminal defendants. See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *State v. Dobbs*, 297 Kan. 1225, 1238, 308 P.3d 1258 (2013) (recognizing "constitutional requirement that the State prove every element of the crime beyond a reasonable doubt"). Instruction No. 6, therefore, injected a

6

legal error of constitutional dimension that permitted the State to convict Albright by proving a less demanding culpable mental state—recklessness—than criminal possession of a weapon requires.

We now take up the last step of our review to assess the legal import of the error. We may find a constitutional error benefiting the State in a criminal case to be harmless only if we are persuaded "beyond a reasonable doubt" that the mistake "did not affect the outcome of the trial" taking account of the full trial record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011); see *Bentley*, 317 Kan. at 242 (preserved instructional error evaluated for harmlessness using *Ward* tests for constitutional and nonconstitutional errors).

The State has failed to overcome that formidable barrier. Here, if the testimony of Albright and Deist caused the jurors to entertain a reasonable doubt that Albright actually knew about the pistol, they should have found him not guilty under the proper culpable mental state. But the jurors could have convicted him of "recklessly" possessing the pistol even if they fully credited the defense testimony. The instruction outlining "recklessly" informed the jurors that Albright would have acted in that way if he "consciously disregard[ed] a substantial and unjustifiable risk that certain circumstances exist[ed]." The circumstance here was the presence of the pistol in the apartment.

Albright testified he was concerned that Deist might have acquired at least some firearms that had belonged to her daughter, but he never inspected the apartment or took other concrete steps to find out. Given Albright's status as a convicted felon and the resulting prohibition on his jointly or individually possessing firearms, the jurors easily could have concluded he disregarded a real risk there was a gun in the apartment, prompting them to return a guilty verdict for that reason. Based on the general verdict, the State cannot show the jurors opted for a different path to their decision, and we cannot infer a rationale more favorable for the State from the trial record.

Moreover, the record, as a whole, does not present an overwhelming case against Albright. The evidence was circumstantial. Neither Albright nor Deist ever said the pistol belonged to him or that he even knew about it. They consistently asserted just the opposite. No forensic evidence, e.g., fingerprints, tied Albright to the pistol. And no witnesses ever put the pistol in Albright's hands.

In a letter of supplemental authority, the State calls our attention to *State v. May*, No. 123,622, 2023 WL 8868785 (Kan. App. 2023) (unpublished opinion), as supportive of its position on the legally sufficient culpable mental states to prove criminal possession of a weapon. See Supreme Court Rule 6.09 (2023 Kan. S. Ct. R. at 40) (submission of additional authority after briefing). The *May* opinion does not do the work the State asks of it. In that case, May was charged with a slew of crimes, perhaps the least serious being a felon in possession of a firearm. May's lawyer requested—and the district court gave— a jury instruction that included "recklessly" as one of the culpable mental states sufficient to prove that crime.

On appeal, May challenged the instruction as legally improper. The panel denied the point because May's trial lawyer had invited any error by asking for the jury instruction and, alternatively, because appellate review would be for clear error. The panel found either basis good enough to reject the claim given the especially strong evidence against May. 2023 WL 8868785, at *14-15. Here, of course, Albright objected to the instruction, so there is no invited error, and we apply a more stringent standard of review. The *May* panel tacitly seemed to assume recklessly might have been a legally proper mental state under the pre-2022 statutory definition of "possession" but never considered, let alone construed, that language. The panel had no need to do so, given how it resolved the issue. We find no illuminating guidance there.

In *May*, the panel noted that the State relied, in part, on *State v. Howard*, 51 Kan. App. 2d 28, 339 P.3d 809 (2014), to support its argument about the requisite culpable

8

mental state. The State has not cited *Howard* to us. We see why: *Howard* is inapposite here, and it was in *May*. Howard argued the State had to prove he knew he was a convicted felon to successfully prosecute him for unlawful possession of a firearm. The panel rejected the argument as a misguided mistake-of-law defense. 51 Kan. App. 2d at 49. In discussing the felon-in-possession statute, the *Howard* panel offered that any of the three culpable mental states would be sufficient to convict because the language did not identify a mental state. The observation was tangential to Howard's point; and it wasn't focused on proving the element of possession—a matter that wasn't even in front of the court. As in *May*, the *Howard* panel never addressed the definition of "possession" in K.S.A. 21-5111 and the imbedded mental state that definition creates in a statute criminalizing possession of something under some circumstance, be it a firearm, a controlled substance, or a gambling device. See *Rizal*, 310 Kan. at 206-07.

In sum, we entertain a reasonable doubt that the outcome of the trial might have been different had the jury been properly instructed on the culpable mental state required to convict Albright of criminal possession of a weapon. We, therefore, reverse the verdict and conviction, vacate the sentence, and remand with directions that Albright be given a new trial.

*Sufficiency of the Evidence*

Albright argues the State submitted insufficient evidence to support the criminal possession of a weapon charge. We take up the issue because the remedy would require us to enter a judgment of acquittal rather than ordering a new trial. See *State v. Baumgarner*, 59 Kan. App. 2d 330, 331, 481 P.3d 170 (2021). In challenging the sufficiency of the evidence, Albright faces the formidable barrier. We construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Aguirre*, 313

Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018). Even the gravest crime may be proved by circumstantial evidence alone. *State v. Douglas*, 313 Kan. 704, 716, 490 P.3d 34 (2021); *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). In a loose sense, we assess the record evidence on this point just the opposite of the way we did in considering the instructional error.

The question is one of law precisely because we resolve the evidentiary disputes in a way favoring the State. Here, we then measure that assessment of the evidence against what the State actually had to prove to convict—that Albright knowingly possessed the pistol—and ask whether jurors reasonably could have convicted under that culpable mental state.

There was credible circumstantial evidence to support a guilty verdict, although we wouldn't characterize the record as strong or overwhelming. First, the loaded pistol was found in the recliner close to where Albright slept, in effect next to his bed. The box for the pistol was among his possessions in the apartment, and the box contained personal items of his including photographs of his dog.

Second, without otherwise parsing the record, we point out a significant discrepancy in Deist's explanation for the pistol being in her apartment. Deist indisputably told the law enforcement officers at the time that an acquaintance she could no longer recall had given her the pistol. At trial, Deist testified that her daughter had given her the pistol. Deist's daughter was then, of course, unavailable to confirm or refute that account. Jurors properly could weigh the rather glaring inconsistency in gauging Deist's credibility, along with her general affection for Albright as her grandson. See *State v. Armstrong*, 240 Kan. 446, 452, 731 P.3d 249 (1987) (noting impeachment of trial

10

witness with prior inconsistent statements); *State v. Bollig*, No. 120,398, 2020 WL 3566537, at *6 (Kan. App. 2020) (unpublished opinion) (noting various factors, including bias and prejudice, potentially diminishing witness credibility). Jurors may fairly conclude that a witness who has been deliberately deceptive about one material fact also will have been deceptive about other material facts. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) (recognizing false-in-one-false-in-all axiom regarding credibility); see also 89 C.J.S. Trial § 742 (2024) (stating maxim: "if the jury believes that a witness's testimony on a material issue is intentionally deceitful, the jury may disregard all of that witness's testimony").[2]

[2] A fact-finder's conclusion that a witness deliberately giving a false or misleading rendition of a material circumstance has been similarly deceptive about other circumstances reflects a proper tool in weighing credibility, along with considerations such as self-interest, bias, prejudice, and demeanor in testifying. But the false-in-one-false-in-all concept should not be the subject of a jury instruction under Kansas law. See *State v. Hartfield*, 245 Kan. 431, 447-49, 781 P.2d 1050 (1989).

Accordingly, the jurors reasonably could have found Deist less than credible in her assertion that the pistol was hers and Albright knew nothing about it. We don't mean to suggest the jurors were obligated to come to that conclusion, but they certainly could have. If they found Deist's account generally lacking credibility, they logically would have been similarly disposed to dismiss Albright's dovetailing denial as untruthful.

The circumstantial evidence coupled with a credibility determination against Albright would be sufficient to reasonably support a guilty verdict.

*Motion to Suppress*

Albright filed a motion challenging the legality of the entry and search of Deist's apartment and sought to suppress the pistol as evidence against him. The district court held an evidentiary hearing and denied the motion. On appeal, Albright contends the

11

district court got it wrong. We consider the point because a ruling in Albright's favor would require a new trial and likely gut the State's case against him.

We review a ruling on a motion to suppress using an established bifurcated standard that asks whether the district court's factual findings are supported by substantial competent evidence. If they are, we then examine the district court's legal ruling on the motion without deference. We do not reweigh the evidence generally or make independent credibility findings. *State v. Bates*, 316 Kan. 174, 183-84, 513 P.3d 483 (2022); *State v. Galloway*, 311 Kan. 238, 245, 459 P.3d 195 (2020). The State must prove the lawfulness of a challenged search by a preponderance of the evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

Pertinent here, under K.S.A. 22-3717(k)(2), a Department of Corrections enforcement, apprehension, and investigations officer may search an individual on postrelease supervision and the individual's residence and property at any time without a warrant or suspicion.[3] The statute applied to Albright since he was on postrelease supervision, although he has been described as being on parole. Albright has not suggested the statute itself permits unreasonable searches that would violate the Fourth Amendment to the United States Constitution. See *State v. Toliver*, 307 Kan. 945, 956-57, 417 P.3d 253 (2018) (suggesting earlier version of K.S.A. 22-3717[k] allowing searches without warrant or suspicion constitutionally acceptable); *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 14, 446 P.3d 1103 (2019) (acknowledging suggestion in *Toliver*).

[3] K.S.A. 22-3717(k)(2) states in relevant part:

"Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to searches of the person and the person's effects, vehicle, residence and property by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause."

12

On appeal, Albright disputes that the State proved an authorized Department of Corrections officer participated in the search. At the suppression hearing, Norman Richardson testified he participated in the search and was then and continues to be employed as an enforcement, apprehension, and investigation officer with the Department of Corrections. He said he and the two other corrections officers participating in the search are assigned from time to time to a federal fugitive task force operating through the U.S. Marshals Service. But Richardson testified he and his colleagues were acting in their capacities as enforcement, apprehension, and investigation officers when they searched the apartment. During the hearing, the State also submitted a bodycam video of the entry and search. Albright testified briefly in support of the motion.

Albright argues that Richardson's testimony alone was insufficient, and the State should have admitted employment records or other departmental documents showing his precise job title or assignment. In a bench ruling, the district court implicitly credited Richardson's testimony and found he had identified himself in the bodycam video as an enforcement, apprehension, and investigation officer with the Department of Corrections. That undercuts Albright's position. Richardson's testimony as to his job duties with the Department of Corrections was sufficient and required no corroboration given the circumstances. Moreover, under K.S.A. 22-3717(k)(2), he and the other officers were not required to disclose to Albright their precise assignments with the Department of Corrections as they conducted the search, although doing so seems like a sensible practice.

Along the same line, Albright argues the State did not produce a written agreement in which he consented to warrantless and suspicionless searches as a condition of his postrelease supervision. He contends the State was obligated prove such an agreement at the suppression hearing. Again, the language of K.S.A. 22-3717(k)(2) is to the contrary. Although individuals on postrelease supervision are to agree in writing to those searches, the statute independently authorizes the designated government agents to conduct such

13

searches. A written agreement, therefore, is not a necessary condition for a valid search under K.S.A. 22-3717(k)(2).

After they entered the apartment, the officers had Albright sign a form consenting to that particular search. The State admitted the signed form at the suppression hearing. In its ruling, the district court found the consent to be valid and denied the motion to suppress for that reason. The district court alternatively relied on the statutory authority to search granted in K.S.A. 22-3717(k)(2).

On appeal, Albright contends he did not voluntarily consent to the search. Voluntariness is ultimately determined from the totality of the circumstances relevant to the particular encounter. The Kansas Supreme Court has identified factors to be considered in making that determination. *State v. Thompson*, 284 Kan. 763, 811-13, 166 P.3d 1015 (2007). Although the district court did not offer detailed findings about the voluntariness of the consent, we need not address Albright's argument on this ground. The search was valid under K.S.A. 22-3717(k)(2), as the district court concluded, whether or not Albright consented after the officers arrived at the apartment.

The district court reached the correct conclusion in denying the motion to suppress.

*Remaining Claims on Appeal*

On appeal, Albright has raised three additional claims of error:

• The district court should have instructed the jury on mistake of fact as a defense based on his testimony that he did not know there was a firearm in the apartment. Albright requested a jury instruction, and the district court declined the request. Mistake of fact typically comes into play when a defendant acknowledges committing an act

14

sufficient to satisfy the elements of the charged crime but asserts an honest mistake about the character of the criminal act, thereby offering an explanation or excuse negating the blameworthiness of the conduct and the requisite culpable mental state or intent. See *Rizal*, 310 Kan. at 205 (outlining nature of mistake of fact defense); *Com. v. Hamilton*, 766 A.2d 874, 878-79 (Pa. Super. Ct. 2001); 22 C.J.S. Criminal Law: Substantive Principles § 125 (2024). As an example, the State suggests Albright might have offered a mistake-of-fact defense for the jury's consideration if he admitted he knew about the pistol but believed it was a replica rather than a functioning firearm.

• On appeal, Albright claims the district court should have given a limiting instruction to the jury on how to consider testimony and other evidence that he was on "parole." He says that amounted to other crimes evidence under K.S.A. 60-455. Albright did not request a limiting instruction during the trial. His status as a convicted felon on conditional release was relevant in explaining the circumstances surrounding the search of the apartment. (As we have stated, Albright actually was on postrelease supervision—a form of release technically different from parole, although it sometimes gets colloquially lumped in with parole as the more widely known term.)

• Albright has asserted that cumulative error during the trial deprived him of a fair hearing. An appellate court will weigh the collective impact of trial errors and may grant relief if their overall effect deprived the defendant of a fair proceeding even when the errors considered individually would not necessarily have done so. *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019); *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court examines the entire trial record in assessing the prejudice multiple trial errors may have caused. 301 Kan. at 167-68. The assessment takes account of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

If we assume the district court erred in denying an instruction on mistake of fact and a limiting instruction regarding Albright's postrelease status to go along with the error in describing the culpable mental state for criminal possession of a weapon, he would have laid a foundation for cumulative error review by citing multiple mistakes. See *State v. Leaper*, 291 Kan. 89, 107, 238 P.3d 266 (2010) (cumulative error claim fails when defendant identifies only one trial error).

But we decline to rule on any of these three additional points on appeal because the remedy for each would be reversal of Albright's conviction and remand to the district court for a new trial—relief we have otherwise granted. The challenges are functionally moot, and we would be offering what would amount to advisory rulings.

Conviction reversed, sentence vacated, and case remanded with directions to the district court to grant Albright a new trial.